**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**LIBERTY MUTUAL INSURANCE COMPANY**,

        Plaintiff,

v.                                             **CIVIL ACTION NO. 5:21-CV-18**
                                                     Judge Bailey

**ATAIN SPECIALTY INSURANCE COMPANY**
f/k/a USF Insurance Company, **MCCLURE MANAGEMENT,
LLC**, and **CINDY KAY ADAMS**,

        Defendants.

## MEMORANDUM ORDER AND OPINION

Pending before this Court is plaintiff Liberty Mutual Insurance Company's Motion for Summary Judgment [Doc. 60] and Accompanying Memorandum in Support [Doc. 61], filed on August 12, 2022. Defendant Atain Specialty Insurance Company ("defendant Atain") and defendant McClure Management, LLC ("defendant McClure") filed respective briefs in opposition on September 2, 2022. *See* [Docs. 64 & 65]. Plaintiff filed respective reply briefs to each brief in opposition on September 16, 2022. *See* [Docs. 66 & 67]. After obtaining leave, defendant Atain filed a Surreply. *See* [Doc. 70]. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, the Motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff Liberty Mutual initiated this action against defendants in an attempt to enforce rights to indemnification for sums it paid under and in relation to an appeal bond ("the bond").

1

*See* [Doc. 1]. The bond issued on behalf of defendant McClure and Cindy Adams, as principals, in relation to their appeal of a judgment entered against them in the Circuit Court of Ohio County, West Virginia. [Id.]. The bond is subject to the penal limit of $1,000,000, and it issued at the request of defendant Atain, the general liability insurance carrier for defendant McClure. [Id.].

Defendant McClure and Ms. Adams lost their appeal in state court and, on November 30, 2020, the Circuit Court of Ohio County, West Virginia entered an Order (1) confirming that the amount of the judgment, plus interest, due to the underlying claimants exceeded the amount of the bond, and (2) mandating that plaintiff pay the full bond proceeds on behalf of the claimants. [Id.]. Pursuant to that Order, plaintiff paid the full $1,000,000 for the benefit of the underlying claimants and in discharge of its obligations under the bond. [Id.].

Germane to this matter is an indemnity agreement signed by defendant Atain relating to bonds. *See* [Doc. 61-3]. Specifically, the indemnity agreement provides its applicability to all "Bonds," including:

> any bonds, undertakings, recognizances, reinsurances, instruments of guarantee or other Surety obligations . . . requested from and/or issued by the Surety before, on or after the date of this Agreement, for . . . any other entity or person in response to a request from [any of the Indemnitors.]

[Id.]. Further, the indemnity agreement states:

> The Principals or Indemnitors shall pay to Surety, promptly upon demand, all premiums, costs and charges of Surety for any Bonds requested from and/or issued by Surety, in accordance with Surety's rate filings, its manual of rates,

2

or as otherwise agreed upon, and where such premium, costs and charges are

annual, continue to pay the same, until the Principals or Indemnitors shall serve

evidence satisfactory to Surety of its discharge or release from all liability under

the Bonds.

[Id.]. Section 3 of the indemnity agreement provides:

The Surety has no obligation to execute, renew, continue, extend, amend or

replace any Bonds, including final bonds (regardless of whether the Surety has

issued a bid or proposal bond), and may, at its sole discretion, decline to do so.

The Surety may cancel any Bonds unless the Bonds state otherwise, and the

Principals and Indemnitors shall make no claim to the contrary.

[Id.]. Section 4 of the indemnity agreement states "[a]ssent by the Surety to changes in any

Bonds and/or in the contracts or obligations covered by any Bonds or refusal so to assent

shall not release or in any way affect the obligations of the undersigned to the Surety." [Id.].

Perhaps most notably, Section 5 of the indemnity agreement provides:

The Indemnitors shall exonerate, indemnify and save harmless the Surety from

and against any and all losses, costs, and damages of whatsoever kind or

nature, including, but not limited to, counsel and consultant fees and expenses,

court costs, and pre- and post-judgment interest (such interest to accrue from

the date of a breach of this Agreement or a breach of any other written

agreements executed with or in favor of the Surety by any Indemnitors and/or

Principals (hereinafter called the ("Other Agreements")), which the Surety may

at any time sustain or incur by reason of the extension of surety credit to any

3

Principal, including but not limited to: (1) the request to execute, procure, or deliver any Bonds; (2) the execution, procurement or delivery of any Bonds, whether already or hereafter executed; or the renewal or continuation thereof; (3) making any investigation or payment; (4) obtaining a release from any Bonds or other obligations related to the extension of surety credit; or (5) the prosecution, defense, or obtaining a release from any action brought in connection therewith, including those subject to bankruptcy court jurisdiction, and, further, those actions relating to the recovery or attempt to recovery any salvage, the failure of the Principals or Indemnitors to perform or comply with the terms of this Agreement or any Other Agreements, and in the enforcement of the terms of this Agreement or any Other Agreements. The Principals and Indemnitors agree that in any accounting between any of them and the Surety, vouchers or other evidence of payment(s) incurred by the Surety shall constitute *prima facie* evidence of the fact and extent of the liability of the Princiapls and Indemnitors to the Surety.

[Id.]. Plaintiff contends that despite its indemnification demands, defendants have failed to reimburse it for the value of the bond plus fees, expenses, and costs.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary

4

judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769

F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." **Celotex Corp.**, 477 U.S. at 322.

## DISCUSSION

Plaintiff now moves for summary judgment by averring that defendant Atain breached the indemnity agreement. [Doc. 61 at 11]. Additionally, plaintiff contends it is entitled to summary judgment against defendant McClure for all losses and related damages it has sustained as a result of satisfying the bond. [Id. at 17]. Accordingly, this Court will address the Motion as it relates to each defendant, respectively.

### I.       Liberty Mutual v. Atain

Plaintiff asserts defendant Atain is liable for the $1,000,000 valuation of the bond, in addition to $123,933 relating to fees, expenses, and costs. [Doc. 61 at 11]. Defendant Atain maintains it is not obligated to pay these funds because (1) plaintiff erroneously relies on Michigan state law; and (2) plaintiff is estopped from recovery based on its own mistake. *See* [Doc. 64 at 10–14].

#### A.       Choice of Law

As an initial matter, this Court will dispose of the parties' arguments concerning the choice of law to apply when interpreting the indemnity agreement. In its Motion for Summary Judgment, plaintiff avers that the indemnity agreement should be governed under Michigan

state law; defendant Atain contends that the indemnity agreement should be governed under

New York state law.[1]  The indemnity agreement contains a choice of law provision, stating:

> 16. GOVERNING LAW - This Agreement shall be governed by and construed
>
> in accordance with the laws of the State of New York (without giving effect to the
>
> conflict of laws principles thereof), except to the extent superseded by federal
>
> law.

[Doc. 61-3 at 7].  Under West Virginia law, choice of law provisions are presumptively valid.

*Facemire v. Huntington Bancshares Inc.*, 2018 WL 4623649, at *1 (N.D. W.Va. Sept. 26,

2018) (Stamp, J.) (citing *Manville Pers. Injury Settlement Tr. v. Blankenship*, 231 W.Va.

637, 644, 749 S.E.2d 329, 336 (2013)).  When a party fails to state why a choice of law

provision should be set aside, the choice of law provision should be enforced.  *Facemire*,

2018 WL 4623649, at *3.  Accordingly, this Court will apply New York law pursuant to the

choice of law provision contained in the indemnity agreement.

## B.  Estoppel

Defendant Atain contends it has no duty to indemnify plaintiff under a theory of estoppel

based on purported misrepresentations made to it concerning closure of the bond.  Under

New York law, "a party to a contract cannot insist upon the fulfillment of a condition when he

has been the cause of its nonperformance." *Field Day, LLC v. Cnty. of Suffolk*, 799

F.Supp.2d 186, 199 (E.D. N.Y. 2011) (quoting *Benincasa v. Garrubbo*, 141 A.D.2d 636,

638, 529 N.Y.S.2d 797 (1988)).  Further, "persons invoking the aid of contracts are under

---

[1] These arguments are largely irrelevant given that the outcome of this litigation would
appear to be the same under either set of law.

7

implied obligation to exercise good faith not to frustrate the contracts into which they have entered." *Grad v. Roberts*, 14 N.Y.2d 70, 75, 248 N.Y.S.2d 644, 198 N.E.2d 26 (1964). "Estoppel 'is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.'" *Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, 2021 WL 4950565, at \*23 (N.D. N.Y. Oct. 25, 2021) (internal citations omitted). "[T]o succeed on the defense of equitable estoppel, defendants must establish three elements. These are: (1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." *Mindspirit, LLC v. Evalueserve Ltd.*, 470 F.Supp.3d 366, 382 (S.D. N.Y. 2020) (internal quotations omitted).

In addition, "the elements of estoppel by silence or inaction, under New York law, [are] (1) a duty to speak; (2) an opportunity to speak; and (3) injury to another party as a result of the failure to speak." *In re Vebeliunas*, 252 B.R. 878, 888 (Bankr. S.D. N.Y. 2000) (internal citations omitted). "The duty to speak may arise where the facts establish (1) a fiduciary or confidential relationship exists, or (2) one party has superior knowledge, or (3) one party will receive unjust enrichment." *Id.* (internal citations omitted).

Defendant Atain's estoppel defense relating to the subject bond is premised entirely on an email exchange between its claims director, Andrew Miller, and Daniel Dunigan, the agent/broker at Simkiss & Block, in December 2019. More specifically, in the emails, Mr. Miller informed Mr. Dunigan that defendant Atain would not need the bond renewed. Mr. Dunigan responded, stating:

> Thanks for getting back to me. To close the bond with the surety, I need to
> provide documentation that the case has been won/closed and their bond
> exposure has been extinguished. Please send me what you have and I'll get
> things in motion to close the bond.

*See* [Doc. 66-9]. Mr. Miller responded:

> Attached is the Opinion which granted Atain's Motion for Summary Judgment
> and directed the clerk to enter judgment. A copy of the judgment is also
> attached.

[Id.]. Mr. Dunigan responded:

> Thanks. We will work with the surety to close the bond. Should there be
> anything else we need from your end, we will be in touch.

[Id.].

It is undisputed among the parties that, in the foregoing emails, Mr. Miller furnished to Mr. Dunigan documents pertaining to a declaratory judgment action filed by defendant Atain against defendant McClure in relation to its obligations as their general liability insurance carrier. More specifically, Mr. Miller emailed (1) an order granting summary judgment in favor of defendant Atain and against defendant McClure in the declaratory judgment action and (2) a judgment in civil action confirming the grant of summary judgment. *See* [Doc. 66-10]. Plaintiff was not a party to that declaratory judgment action, and neither it nor the bond are mentioned in the emailed order.

Defendant Atain's estoppel defense relies entirely on this email exchange, which does not include plaintiff. Moreover, defendant Atain has acknowledged that Mr. Dunigan and

9

Simkiss & Block served as its agent/broker—not plaintiff's agent. Further, defendant Atain has

not identified any representation made to it by plaintiff or anyone acting on plaintiff's behalf that

the bond had been closed in December 2019.

Examining the record as a whole, it is clear that defendant Atain's estoppel argument

must fail because plaintiff never misrepresented the status of the bond to defendant Atain. To

the extent defendant Atain argues for estoppel by silence or inaction, it cannot establish those

elements either. It is indisputable that plaintiff had no duty to defendant Atain because there

was no fiduciary or confidential relationship in place, both plaintiff and defendant Atain

possessed equal knowledge, and no party received unjust enrichment. Moreover, the bond

did not create such duty, and the indemnity agreement clearly indicates that plaintiff owed no

such duty to defendant Atain. In sum, this Court rejects defendant Atain's arguments and finds

it to be responsible for the bond and plaintiff's associated expenditures.

## C.    Interest

Plaintiff has also moved this Court for an award of both pre- and post-judgment interest.

Pursuant to West Virginia Code § 56-6-31, this Court will award pre-judgment interest at a

rate of 4%, consistent with Supreme Court of Appeals of West Virginia's 2022 Interest Rate

on Judgments and Decrees.

Pursuant to 28 U.S.C. § 1961, the amount of post-judgment interest is the equivalent

of the "weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding the date of the

judgment," which is currently 4.56% per annum. This Court finds entry of pre- and post-

judgment interest appropriate in this case.

## II.     Liberty Mutual v. McClure

Plaintiff has also moved for summary judgment against defendant McClure under a theory of implied indemnity. *See* [Doc. 61 at 18–19]. For relief, plaintiff requests an award of $1,000,000 to be paid by defendant McClure "for its common law obligation of indemnification." [Id. at 20]. Irrespective of whether a common law obligation of indemnification exists, this Court finds that plaintiff's request in this regard should be denied given this Court's ruling granting summary judgment against defendant Atain. To hold otherwise would essentially entitle plaintiff to a million dollar windfall, which is entirely inequitable. Accordingly, plaintiff's Motion as it pertains to defendant McClure will be denied.

## CONCLUSION

For the reasons contained herein, plaintiff Liberty Mutual Insurance Company's Motion for Summary Judgment [**Doc. 60**] is **GRANTED IN PART AND DENIED IN PART**.

This case is now **DISMISSED WITH PREJUDICE**, and the Clerk is **DIRECTED** to enter judgment in favor of plaintiff in the amount of $1,123,933.90 against defendant Atain, plus pre- and post-judgment interest as articulated herein.

The Motion to Continue [**Doc. 71**] is **DENIED AS MOOT**.

Moreover, this matter shall be **STRICKEN** from the active docket of this Court.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: November ___4___, 2022.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE